EDWARD E. RICE vs. CAMILLE D'ARVILLE.

Suffolk.    December 7, 1894. — January 2, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Contract of Hiring — Enforcement of Negative Covenant — Equity — Inability of Plaintiff to perform — Offer of Bond.*

A negative covenant in a contract of hiring will not be enforced where, if the court had the power, it would not enforce an affirmative covenant.

A., a theatrical manager, and B., a singer, entered into a written contract, by the terms of which A. engaged B. to render services to him for a certain period at a stated salary. The contract also contained the provisions that B. "hereby agrees to render said services to the best of her ability at any theatre desired by" A. "in a correct and painstaking manner"; and that B. "hereby agrees that she will not render services at any other place of amusement . . . from the date of the commencement of this contract to its close, except those under the management of" A. After the contract was executed, but before it was operative, A. became indebted to B. for services rendered under a previous contract, and was unable to pay her, and would be unable to perform his part of the second contract unless the theatrical season proved successful. B. repudiated this contract, and entered into an engagement with another manager. A. thereupon brought a bill in equity to restrain B. from singing except under his management, and, at the hearing, a bond to the satisfaction of the court for the performance of A.'s part of the contract was offered by him. *Held,* that the bill could not be maintained.

Inability on the part of the plaintiff to perform his part of an agreement is a good ground for refusing to enforce the agreement against the defendant in a bill in equity for specific performance.

After one party to a contract has, for good cause, refused to perform his part, and has entered into other engagements, the offer by the other party of a bond for the performance of his part of the contract is of no effect.

LATHROP, J.    This is a bill in equity, filed on September 18, 1894, to restrain the defendant from performing or singing at any theatre or place of amusement in the United States or Canada, except under the management of the plaintiff.    On November 27, 1893, the plaintiff and the defendant entered into a contract by the terms of which the plaintiff engaged the defendant as prima donna of his company, to render services at such theatres, opera-houses, and halls as required, beginning on or about September 17, 1894, and to continue for a season of thirty-five weeks, or more, at the option of the plaintiff.    For this he agreed to pay her $450 a week when in New York or

Boston, and $500 a week elsewhere. The plaintiff was also to pay railroad and steamboat transportation, but not carriage hire. The contract also contained these clauses: "And said Camille D'Arville hereby agrees to render said services to the best of her ability at any theatre desired by said Rice in a correct and painstaking manner. . . . Said Camille D'Arville hereby agrees that she will not render services at any other place of amusement in the United States or Canada, from the date of the commencement of this contract to its close, except those under the management of " the plaintiff.

The contract also contained an agreement as to the years 1895 and 1896.

The single justice of this court who heard the case has found that, when this contract was made, the defendant was performing for the plaintiff under an earlier and similar contract; that although at the time the contract of November, 1893, was signed nothing was due the defendant, the plaintiff soon after began to run behind with her salary, and now owes her some thousands of dollars, which he is unable to pay, and which he told the defendant he was unable to pay before 'she refused to go on under the present contract; and that the defendant's chance of getting her pay, so far as the plaintiff is concerned, would depend upon the success of the season, and perhaps on other elements.

At the hearing, a bond to the satisfaction of the court for the performance of the plaintiff's undertaking in this contract was offered by him.

Before the filing of the bill, the defendant repudiated the contract, and entered into an engagement with another manager.

The defendant is found to be a singer of established reputation in comic opera, and of such excellence that in a commercial sense her loss to the plaintiff would be irreparable, though there is at least one comic opera singer in this country who has as high or a higher rank.

It is conceded that the court has no power to enforce the affirmative covenant in the agreement; but the plaintiff contends that the negative covenant should be enforced. The effect of this would be to compel the defendant either to perform for the plaintiff or to remain idle. The principal authority in favor of the plaintiff's contention is the case of *Lumley* v.

*Wagner,* 1 DeG., M. & G. 604, which has lately been followed to some extent in this country, contrary to earlier cases, and has been much criticised in England.    See Beach, Eq. §§ 604, 605; Fry, Spec. Perf. (3d ed.) §§ 860–862; *Davis* v. *Foreman,* [1894] 3 Ch. 654.

We have no occasion, however, at present to determine whether we should in any case enforce a negative covenant in a contract of hiring, when we had no power to enforce a posi- . tive covenant; as we are of opinion that in the case at bar this power should not be exercised.

We are not disposed to enforce a negative covenant, where, if the court had the power, it would not enforce an affirmative covenant.    Suppose the owner of a parcel of land should covenant to sell it for a certain price, and should also covenant not to sell it to any one else, and when the time came for performance the covenantee was unable to pay for it.    Here the court would certainly dismiss a bill for specific performance, whether it sought to enforce the affirmative or the negative covenant.

Taking this to be the rule, it seems to us plain that, in the case at bar, the court would not, if it had the power, enforce the affirmative covenant.    Without regard to the failure of the plaintiff to perform his previous contract with the defendant, the only inference which can be drawn from the findings of the justice who heard the case is that the plaintiff is unable to perform his part of the contract, and will be unable to perform it unless the season proves successful.    The defendant ought not to be subjected to this contingency.    Nor ought the court, by enforcing the negative covenant, to compel her to be so subjected, or to remain out of employment.

Inability on the part of the plaintiff to perform his part of an agreement is a good ground for refusing to enforce the agreement against the defendant in a bill in equity for specific performance.    *Carter* v. *Phillips,* 144 Mass. 100, 102.    *Willingham* v. *Joyce,* 3 Ves. 168.    *Franklin* v. *Brownlow,* 14 Ves. 550. *Price* v. *Assheton,* 1 Y. & C. Ex. 441.    *M'Nally* v. *Gradwell,* 16 Ir. Ch. 512, 519.

The fact that the plaintiff at the hearing offered a bond for the performance of his contract makes no difference.    This was offered after the defendant, for good cause, had refused to con-

tinue with the plaintiff, and had entered into other engagements. Besides, a bond is not an assurance that the money will be paid when due according to the terms of the contract, but an agreement which usually has to be enforced by a lawsuit.

*Bill dismissed.*

*J. H. Blanchard*, for the plaintiff.

*A. H. Hummel* (of New York) *& R. T. Babson*, for the defendant.