SUBURBAN COAT, APRON & LINEN SUPPLY CO. INC. *vs.* J. ELMER LeBLANC & others.

Essex. March 8, 1938. — June 24, 1938.

Present: FIELD, LUMMUS, DOLAN, & COX, JJ.

*Unlawful Interference. Contract,* Of employment.

Employment of a route driver with notice that he formerly had been employed as such by a competitor under a contract in substance that, after leaving such employment, he would not solicit nor par-

ticipate in the solicitation of that employer's customers, and use of his knowledge by the new employer in solicitation of those customers, rendered the new employer liable for damages so caused to the former employer.

BILL IN EQUITY, filed in the Superior Court on August 20, 1937.

From a final decree entered by order of *Donnelly*, J., the plaintiff appealed.

*M. Brown*, for the plaintiff.

*J. E. Farley*, (*J. M. Barnes* with him,) for the defendants Pleau.

LUMMUS, J.  The defendant LeBlanc entered the employ of the plaintiff in Lynn on August 8, 1931, as a driver upon a route, delivering to customers the garments and towels supplied by the plaintiff, and gathering them again when soiled.  By reason of his employment, LeBlanc acquired the names, addresses, requirements and prices of the customers visited by him, and knew them by memory.  The routes, as established and maintained by the plaintiff, represent in a very substantial measure the good will of the plaintiff's business.

The contract of employment between the plaintiff and LeBlanc, dated August 8, 1931, in its sixth paragraph, provided as follows: "The employee, upon the termination of his employment, shall not, for a period of five years thereafter, directly or indirectly, engage in the same or a similar business, either individually, as a member of a firm, or stockholder in a corporation, or a certificate holder in a business trust.  He shall not solicit, serve, cater to or engage, assist, be interested in or connected with any other person, firm, corporation or business trust soliciting, serving or catering to any of the customers known by him to be customers of the employer."

On July 31, 1937, the defendant LeBlanc was discharged by the plaintiff for good reason.  *Economy Grocery Stores Corp.* v. *McMenamy*, 290 Mass. 549, 552.  Two days later he talked with the defendants Edward Pleau and Bessie C. Pleau, respectively the manager and the proprietor of "Quality Linen Service" at Salem, which conducted a

business like that of the plaintiff, and was employed by that "Service" until September 18, 1937, but for work in Salem only. He had been a partner with Bessie C. Pleau in that "Service" in Lynn prior to July 6, 1931, when that "Service" sold its business in Lynn to the plaintiff.

The defendant LeBlanc did not solicit for Quality Linen Service any of the customers whom he had visited for the plaintiff in Lynn. But Edward Pleau did, with such success that twenty-nine customers, none of them dissatisfied with the plaintiff's service, transferred their custom from the plaintiff to Quality Linen Service. Earlier solicitation by Edward Pleau, while LeBlanc was in the employ of the plaintiff, had been ineffective, and so was solicitation of the plaintiff's customers who were not on LeBlanc's route. Edward Pleau, in soliciting customers, did not mention LeBlanc or the plaintiff. But LeBlanc and his wife were prominent and popular in the French speaking community in Lynn, and many of the twenty-nine customers who transferred their custom were members of that community. The most that LeBlanc did was to "put himself out of his way to let some of these customers know that he was through with the plaintiff." In some way many customers discovered that he was working for Quality Linen Service.

The master found that LeBlanc was employed for the plaintiff in Lynn, Swampscott, Nahant, Saugus, Revere, Chelsea and Boston, and that restraint upon him beyond those places or beyond three years is unnecessary to the protection of the plaintiff. *Metropolitan Ice Co.* v. *Ducas*, 291 Mass. 403, and cases cited. *Walker Coal & Ice Co.* v. *Love*, 273 Mass. 564. Accordingly, a final decree was entered, in substance restraining him for three years from July 31, 1937, from doing in those places any of the acts forbidden by the sixth paragraph of the contract of August 8, 1931, with costs, and dismissing the bill against the defendants Edward Pleau and Bessie C. Pleau. *Boston & Suburban Laundry Co.* v. *O'Reilly*, 253 Mass. 94. *Walker Coal & Ice Co.* v. *Westerman*, 263 Mass. 235. *Becker College of Business Administration & Secretarial Science* v. *Gross*, 281 Mass. 355. Compare *Horn Pond Ice Co.* v. *Pearson*,

267 Mass. 256, 258, 259.  The plaintiff appealed.  It contends the decree ought to have awarded an injunction, or at least damages, against Edward Pleau and Bessie C. Pleau.  No complaint is made of the decree so far as it relates to LeBlanc.

Not only did the defendant Bessie C. Pleau know that drivers employed in the linen service business commonly worked under a contract with their employers, but within two or three days after she employed LeBlanc she had notice "that he was under contract with the plaintiff." This, we infer, was notice of the essential terms of the contract.  Moreover, about a week from the time when she employed LeBlanc she had "called to . . . [her] attention" a written opinion, construing the contract, given LeBlanc by a lawyer retained by him.  Notwithstanding the notice which she had that LeBlanc was violating his contract and the equitable rights of the plaintiff by taking employment with her, since she was "soliciting, serving . . . [and] catering to" customers known by LeBlanc "to be customers of the" plaintiff, she continued to employ LeBlanc and to receive the benefit of his popularity, at the expense of the plaintiff.  Her employment of LeBlanc has ended, and no useful purpose would now be served by an injunction against her.  But we see no reason why she should not pay damages, which have been assessed at $500.  *Whiting Milk Co.* v. *Grondin*, 282 Mass. 41, 44.

The final decree is to be modified by the insertion of an order to the defendant Bessie C. Pleau to pay to the plaintiff damages in the sum of $500, and by including her in the order to pay costs, and as so modified it is affirmed, with costs to the plaintiff.

*Ordered accordingly.*