Locke, Jeffrey A., J.
Plaintiff Advanced Cable Ties, Inc. (“ACT”) is a Massachusetts corporation engaged in the design, manufacture, marketing and sale of plastic cable ties. Defendant David Hewes (“Hewes”) was, from June 2002 until his departure in September 2006, an employee at ACT with the title of Tooling Engineer. When he left ACT, Hewes was hired at Mountain Base Mold and Manufacturing, Inc. (“Mountain Base”), a fabricator of steel molds for a variety of industrial users.
By complaint filed on September 29, 2006, ACT alleges that Hewes has violated a covenant not-to-compete by obtaining employment at Mountain Base and, as well, that Mountain Base has tortiously interfered with ACT’S contractual relations by hiring Hewes. Attendant to filing its complaint, ACT has sought a preliminary injunction seeking to restrain Mountain Base from employing Hewes during the pendency of this litigation.
The plaintiff relies on Section Five of its 2002 employment agreement with Hewes as grounds for injunctive relief. In simplest form, the agreement provides that for a one-year period of time after the end of his employment relationship with ACT, Hewes shall not “directly or indirectly” engage in businesses that compete with ACT in the manufacture or sale of cable ties. Mountain Base is not a manufacturer or seller of cable ties. Rather, it fabricates molds for a wide variety of industries and Hewes was hired as a production line supervisor supervising machinists. However, ACT, in connection with separate litigation against one of its direct competitors, Bay State Cable Ties, Inc., learned that Mountain Base had provided molds for them.[1] Consequently, goes the plaintiffs claim, Mountain Base (and by extension, Hewes) is indirectly competing with ACT by fabricating molds used by a competitor. Concomitant with this claim is the assertion that Hewes, having knowledge of ACTs trade secret and other propriety information which ACT sought to protect through its non-competition covenant, will likely divulge and make use of these secrets to the detriment of the plaintiff.
The standards for a preliminary injunction are well known and established. See Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001) (“To succeed in an action for preliminary injunction the plaintiff must show: 1) a likelihood of success on the merits; 2) that irreparable harm will result from denial of the injunction; and 3) that, . . . the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant . . .”); see also Packaging Industry Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
An employer is entitled to the benefits of, and may enforce, the terms of a non-competition agreement with a former employee when it demonstrates that the agreement (a) is necessary to protect a legitimate business interest of the employer, (b) is supported by consideration, (c) is reasonably limited in all circumstances, including time and space, and (d) is otherwise consonant with public policy. Whittinsville Plaza v. Kotseas, 378 Mass. 85, 102-03 (1962); Marine Construction Company v. Herl, 365 Mass. 280, 286-88 (1974).
The covenants in Hewes’ employment agreement regarding non-competition are reasonable in time and space and do not offend public policy. The limitation on other employment is for a one-year period of time, well within the umbrella of reasonableness for employment contracts. See, e.g. All Stainless, Inc. v. Colby, 364 Mass. 773 (1973) (two-year restriction enforced); Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, *597 289 (1974) (three-year restriction enforced). Although there is no geographical limitation to future employment this does not present a bar given the fact that ACT is a national manufacturer of plastic cable ties. As well, there is nothing in the non-compete agreement that offends public policy or would serve as a bar to injunctive relief.
It is well-settled, however, that such covenants “generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer.” Marine Contractors Co., supra at 287 (citing Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961). Trade secrets, propriety information and customer goodwill clearly constitute legitimate business interests. In its submissions supporting the request for injunctive relief, ACT has demonstrated that its design and manufacturing process has enabled it to produce cable ties of substantial strength which has given ACT a substantial market share in a highly competitive industry. While employed at ACT, Hewes participated in the design of four patented mold systems for manufacturing cable ties. Presumably he has acquired precisely the sort of propriety information that ACT seeks to protect. However, there is no evidence that Hewes has, or will, divulge the secrets of his former employer while working for Mountain Base. As the plaintiff concedes, Mountain Base is not a competitor of ACT in the manufacture of cable ties. It is a maker of molds. Molds for the manufacture of cable ties has been less than 10% of its total business and of this number, two of its four contracts for cable tie molds were with ACT. Moreover, unlike many of the cases coming before the court seeking to enforce non-competition covenants, Hewes did not depart ACT on a sour note nor was he recruited by a competitor. Rather, his departure was precipitated by a need to work close to his elderly and ill parent.
Under these circumstances, the Court finds that the plaintiff has demonstrated a right to injunctive relief based on its likelihood of success in enforcing the covenant not-to-compete, but not to the extent of forbidding Hewes’ employment at Mountain Base entirely. Rather, it will suffice to protect the plaintiffs legitimate interests to restrict Hewes from any involvement in contracts relating to the design, production or manufacture of molds or molding systems to be used in the cable tie industry or for direct competitors of ACT.

ORDER

It is HEREBY ORDERED, that defendant David Hewes shall not engage in or perform, and defendant Mountain Base Mold & Mfg., Inc. shall not solicit Hewes to engage or perform, any acts relating to the design, construction, manufacture, testing or improvements, relating to the construction or fabrication of molds or molding systems for use in the cable tie industry, nor shall the defendant Hewes provide advice, expertise, consultation or input to Mountain Base or customers of Mountain Base relating to the design or manufacture of such molds or molding systems. In the event Mountain Base has or receives contracts from cable tie manufacturers for such molds or molding systems, Mountain Base shall take such steps as are necessary to insure that defendant Hewes does not participate in or work on those contracts.
This order shall remain in effect until September 22, 2007 unless otherwise ordered by the Court.

It was acknowledged at the hearing on the motion for preliminary injunction that Mountain Base’s work for Bay State preceded Hewes’s employment.